UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| ROBERT FITZGERALD, | ) | |
| | ) | |
| | ) | Civil Action No. 5:07-413-JMH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| CONTINENTAL ASSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**      **      **      **      **

This matter is before the Court on Plaintiff's Motion to Remand [Record No. 9].  Defendant has filed a Response [Record No. 14], and the time for filing a reply has expired.  The Court being sufficiently advised, this motion is ripe for decision.

**I.   BACKGROUND**

Defendant insured a "Group Long Term Life Insurance Policy/Privilege/Waiver of Premium Disability Benefit/Continuation of Disability Benefit/Renewable with the Consent of the Company/Non-Participating" employee benefit plan formulated and sponsored by Cardinal Health, Inc. (hereinafter, "Cardinal"), Plaintiff's direct or indirect employer.  The Master Application for the Policy was made by Cardinal.  The policy included Dependent Life Insurance, Basic Life Insurance, and Accidental Death &

-1-

Dismemberment Coverage.

Cardinal divided its employees into five separate classes for determining their eligibility for the various coverages. Policy coverage was, as a general matter, "non-contributory" as no premium payment was required from employees like Plaintiff because Cardinal paid the premiums for Basic Life Insurance, Accidental Death & Dismemberment Coverage, and Retiree Life Insurance. Only coverage under the Supplemental Life and Dependent Life Insurance required an employee's premium contribution. Those premium rates were established by agreement between Defendant and Cardinal.

The Policy was effective on a group basis for Cardinal employees and not at the sole discretion of individual employees. The Termination of Policy provision required 100% participation by eligible persons in all non-contributory coverages and allowed Defendant to terminate the entire Policy if there was less than 25% employee participation in contributory coverages. Cardinal was to provide Defendant with the names of all eligible persons, both before and after the Policy effective date, provide the names of persons whose eligibility ceased, and provide data necessary to determining the premium for the Policy.

Continental provided Certificates of Insurance to Cardinal for Cardinal to provide to its employees. The Certificates incorporate all of the Policy coverages, not just the one at issue in this matter, and affirm Cardinal's continuing and active role with the

Policy.   Among other provisions, the Certificate (1) states that the Policy can only be amended by mutual consent between Cardinal and Defendant; (2) directs employees to contact Cardinal with any questions; (3) contains a schedule of benefits which includes all Policy coverages, not just dependent life coverage; (4) states that all employees are automatically enrolled in the non-contributory coverages when first eligible; and (5) has only five of its thirty-three pages devoted exclusively to Dependents' Insurance coverage, while the rest relate to either all coverages or to the non-contributory coverages for which Cardinal paid the premiums.

The Policy purports to comply with the requirements for establishing a plan governed by ERISA and states that Cardinal intended that the benefit plan meet the requirements of ERISA.   In fact, the Policy includes a section entitled "Your Rights Under ERISA."   The Summary Plan Description names the Plan under which all coverages are provided as the "Cardinal Health, Inc. Group Life Plan," states that the Plan is maintained by Cardinal, states that the type of Welfare Plan is a group life plan, and identifies Cardinal as the Plan Administrator, purporting to make Cardinal a fiduciary under ERISA.

In 2001, Plaintiff procured Dependent Life Insurance coverage on his wife under this Plan and paid the premium for this coverage himself, without contribution from Cardinal.   Plaintiff filed suit in Clark Circuit Court claiming that Defendant breached that life

-3-

insurance contract when it failed to pay benefits to him following the death of his wife in 2002. [Record No. 1-1.] Defendant Continental Assurance Company timely filed a Notice of Removal in this Court, claiming that the matter was properly removed as Plaintiff's claim relates to the administration of a benefit plan governed by the Employment Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* [Record No. 1.]

Plaintiff does not deny that, when applicable, ERISA preempts all common law and statutory claims and provides for original jurisdiction in the district courts of the United States. 29 U.S.C. § 1132(e) and (f). Rather, Plaintiff argues that the plan at bar is not governed by ERISA, that his state law claims are not preempted, and that this matter should be remanded to Clark Circuit Court as this Court lacks original jurisdiction over the matter. Specifically, Fitzgerald argues that the Plan is exempt from ERISA as the coverage under which he claims a benefit does not satisfy the "endorsement" requirement of the Department of Labor Safe Harbor regulation. For the reasons stated below, Plaintiff's motion is not well taken, and his motion will be denied.

## II. DISCUSSION

According to the well-pleaded complaint rule, a plaintiff's complaint must state claims that arise under federal law in order for federal courts to have jurisdiction pursuant to 28 U.S.C. § 1331. *Harvey v. Life Ins. Co. of No. Amer.*, 404 F. Supp. 2d 969,

-4-

974 (E.D. Ky. 2005). Simply stated, a plaintiff's cause of action arises under federal law if "federal law creates the cause of action" or, if the action is a state claim, "when Congress expressly so provides, ... or when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983) and *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8 (2003)). "For purposes of removal, if there is complete pre-emption, then the state law complaint is converted to one arising under federal law and satisfying the well-pleaded complaint rule." *Id.* (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

A state law claim to recover benefits due to the plaintiff under a policy covered by ERISA, to enforce his rights under such a policy, or to clarify rights to future benefits under such a policy, i.e., a claim that may be brought pursuant to ERISA's enforcement provision, 28 U.S.C. § 1132(a)(1)(B), are completely pre-empted under ERISA. *See* 29 U.S.C. § 1132(e) and (f); *Harvey*, 404 F.Supp.2d at 973. "Complete pre-emption provides removal jurisdiction because the state law claims are re-characterized as claims arising under ERISA." *Harvey*, 404 F.Supp.2d at 973 (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)).

In the instant matter, Plaintiff argues that the Dependent Life Policy is not enforceable under § 1132 of ERISA and, thus, not

-5-

completely pre-empted, because the policy at issue is not an ERISA welfare benefit plan, i.e.:

> . . . any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186 of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(c). Plaintiff does not dispute that his state law claims for breach of contract are, in fact, claims for wrongful denial of benefits and could fall within § 1132(a)(1)(B) as a claim seeking to enforce rights under the terms of a plan. Thus, his state law claims will be completely pre-empted if the Dependent Life policy is, in fact, an ERISA employee welfare benefit plan. *See Metro. Life Ins. Co.*, 481 U.S. at 65-67.

In order to determine whether an insurance plan is an ERISA welfare benefit plan, this Court must make an inquiry as follows:

> First, the court must apply the so-called safe harbor regulations established by the Department of Labor ["DOL"] to determine whether the program was exempt from ERISA. Second, the court must look to see

-6-

if there was a plan by inquiring whether from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits. Finally, the court must ask whether the employer established or maintained the plan with the intent of providing benefits to its employees.

*Thompson v. Am. Home Assurance Co.*, 95 F.3d 429, 434-35 (6th Cir. 1996) (internal citations and quotations omitted). The DOL safe harbor exemptions that must be analyzed for the first prong of the *Thompson* test provide that an employee insurance policy is excluded from ERISA if:

(1) No contributions are made by an employer ...

(2) Participation in the program is completely voluntary for employees ...

(3) The sole functions of the employer ... with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees ..., to collect premiums through payroll deductions ... [,] and to remit them to the insurer; and

(4) The employer ... receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions....

29 C.F.R. § 25120.3-1(j) (2005). In order for

-7-

> the plan to be exempt under the regulations,
> all four criteria must be satisfied.

*Harvey*, 404 F.Supp.2d at 974.

The Plan at bar fails to meet at least three of the criteria for exemption from ERISA. For example, even though Plaintiff may have been responsible for paying the premiums for the Dependent Life Insurance coverage that he procured, Cardinal made contributions to the Plan as a whole as it provided and paid for Basic Life, ADD, and Retiree Life portions of the Policy for its employees, including Plaintiff. Indeed, the Summary Plan description reflects that "[c]ontributions to the Plan are made by the employer and the employee." The Court cannot ignore the contributions made by Cardinal simply because the portion of the Policy under which Plaintiff seeks payment was contributory. The Court should not sever one portion of an integrated benefits plan for consideration and ignore the rest. Rather, "[f]or the purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled." *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000); *see Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 463 (10th Cir. 1997) (for purposes of satisfying safe harbor provision, where employer contributed entire cost of mandatory ADD insurance, optional disability insurance was feature of Plan notwithstanding fact that employee contributed entire cost for same). As Plaintiff cannot demonstrate that no contributions were made by his employer, he

-8-

fails to meet the first element of the text for exemption, and his claim for exemption fails.

Further, the facts demonstrate that participation in the Plan as a whole was not voluntary for employees such as Plaintiff and that Cardinal did much more than, "without endorsing the program, . . . permit the insurer to publicize the program to employees . . ., collect premiums through payroll deductions ... [,] and remit them to the insurer." *See Harvey*, 404 F.Supp.2d at 974. On the evidence presented, the Plan as a whole was Cardinal's Plan, and Dependent Life coverage was part of Cardinal's Plan. Even though employees were required to contribute 100% of the cost of Dependent Life coverage if elected, Cardinal contributed some or all of the cost of other coverages, including mandatory coverage, made available to its employees by virtue of the Plan. Although employees like Plaintiff could choose from among various optional coverages, the core coverage provisions were provided to all employees by Cardinal and the optional coverages were available to them as an extension of the core coverage. It follows that, even if Plaintiff could meet the first element, he cannot satisfy elements two and three of the test for exemption, and his exemption argument would still be to no avail.

Turning to the second and third parts of the inquiry under *Thompson*, Plaintiff does not challenge nor does the Court find any reason why a reasonable person could not ascertain the intended

benefits (the various mandatory and optional coverages), the class of beneficiaries (Cardinals' employees and, perhaps, their families), the source of financing (Cardinal and its employees' contributions), and procedures for receiving benefits from the Plan materials.  Further, Plaintiff does not challenge and the evidence demonstrates that Cardinal established and maintained the Plan with the intent of providing benefits to its employees.

Ultimately, Plaintiff's well-pleaded complaint raises issues that may be pursued under the relevant provisions of ERISA.  The state law claims raised by Plaintiff are, in fact, claims to recover benefits under an employee benefit plan contemplated by ERISA, which completely preempts that area of law, and subjects the action to removal to the federal courts as a civil action arising under law of the United States.  *See* 28 U.S.C. § 1331; 29 U.S.C. § 1144; *Metro. Life Ins. Co.*, 481 U.S. at 64; *Harvey*, 404 F.Supp.2d at 977.  Plaintiff's Motion to Remand shall be denied.

Accordingly, **IT IS ORDERED**:

(1)  that Plaintiff's Motion to Remand [Record No. 9] shall be, and the same hereby is, **DENIED**; and

(2)  that the portion of the Court's preliminary scheduling order [Record No. 7], which required the parties to confer and file a proposed briefing schedule for submission of the remaining issues in this matter to the Court within fifteen (15) days of the filing of this memorandum opinion and order, is **STRICKEN AND HELD FOR**

-10-

**NAUGHT**;

(3)  that the plaintiff, by counsel, shall have sixty (60) days to file his memorandum in opposition to the Administrator's decision;

(4)  that the defendant, by counsel, shall have thirty (30) days from the receipt of plaintiff's opposing memorandum to file its supporting memorandum;

(5) that the plaintiff, by counsel, shall have fifteen (15) days after the filing of defendant's memorandum to file a reply, at which time the Clerk shall submit the record for the Court's consideration.

This 30th day of December, 2008.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge